UNITED STATES of America,
Appellee,

v.

Rowan Gordon RICHERSON, Appellant.

No. 71–1692.

United States Court of Appeals,
Tenth Circuit.

June 16, 1972.

Richard W. Bangert, Wheat Ridge, Colo., for appellant.

Ruth C. Streeter, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., with her on the brief), for appellee.

Before BREITENSTEIN, SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from a conviction of bank robbery in violation of 18 U.S.C. § 2113(a) and (d).

On April 24, 1971, the Fidelity National Bank in Albuquerque, New Mexico, was robbed of $36,000. A double-barreled, 38-caliber derringer was used during the robbery, and after spending approximately forty-five minutes in the bank with the manager and three employees, the robber drove off in the manager's car. Two days later, appellant was taken off a commercial airplane about to leave the airport in Springfield, Illinois. He was interrogated, and arrested on other charges. He was subsequently identified as the bank robber by several witnesses, and the testimony of these and others at trial effectively traced his movements from the time of the robbery until his arrest.

The issues raised on this appeal center upon appellant's arrest and detention. Mr. Carnduff, an Illinois State Police officer, on his regular rounds met appellant in a bar in Springfield during the late afternoon of April 25, 1971, the day after the robbery. Appellant was talking with the barmaid, and was introduced to Officer Carnduff as "Frank." After appellant left, the barmaid told Carnduff that appellant had purchased four drinks, each time cashing a new twenty-dollar bill. Appellant had also told the barmaid about "pulling a job in Texas," and had encouraged her to go to Las Vegas, Nevada, with him. Carnduff was also informed that appellant had a large roll of twenty-dollar bills in his pocket—"about two inches thick," and upon checking the four bills in the bar cash register he found their serial numbers to be in sequence.

Upon calling the FBI, Carnduff learned that appellant fit the description of the person who robbed the bank in Albuquerque the day before. He was also advised that the Albuquerque bank robber had used a derringer pistol. That night Carnduff began looking for appellant, and the next morning he continued a check of the local bars and hotels accompanied by two FBI agents who had been alerted by Carnduff's call the night before. Officer Carnduff also left the serial numbers of the suspect bills with various hotel clerks and airport personnel. One of the FBI agents received a call from a hotel stating that an individual answering appellant's description had just checked out. Upon arriving at the hotel, the agent learned that the appellant, who had used the name William King, had just taken a taxi to the airport. Shortly thereafter the FBI received a call from Ozark Airlines indicating that a man had just purchased a ticket with new twenty-dollar bills with serial numbers in sequence. The two FBI agents proceeded immediately to the airport, and had the Ozark flight detained. Officer Carnduff also arrived at the airport, went aboard the plane, and while talking with the flight crew he noticed appellant seated toward the rear of the plane. After identifying himself and informing appellant that he wanted "to talk to him," Carnduff escorted appellant from the plane.

Appellant was immediately taken to an unoccupied office in the airport for questioning. When asked his name, appellant refused to answer. Carnduff asked him to empty his pockets, and one of the FBI agents simultaneously advised him of his rights. Two 38-caliber shells were found in his pocket, and appellant volunteered that his gun, a derringer, was in his suitcase. A cigar box which appellant was carrying was opened and found to contain a large amount of money. A warrant was obtained to search the suitcase. It was then searched and appellant was held under an Illinois firearms registration law.

Appellant was held in custody on the state charge until April 28th, at which time he was served with the federal indictment from New Mexico issued on April 27th. He was also indicted in Illinois on April 30th and arraigned on the gun violation. The United States attorney in New Mexico applied for a writ of habeas corpus ad prosequendum and the state charges were subsequently dropped. Upon his return to New Mexico, appellant's arraignment was begun on May 14, 1971, at which time he requested appointment of counsel. He ap-

peared with counsel on May 21, 1971, and because he was suffering from acute osteomyelitis it was requested that arraignment be postponed. Subsequently a plea of not guilty was entered by virtue of appellant's standing mute.

Appellant argues that his warrantless arrest was made without probable cause, and the evidence obtained as the result of the search on his arrest was inadmissible. It is further urged that the alleged delay between arrest and his ultimate arraignment on the federal charges deprived him of due process.

With regard to his arrest, the Government suggests that appellant was not technically arrested until the shells were discovered on his person in the airport office; it is urged that his detention on the aircraft was merely investigatory and that prior to his actual arrest the Fourth Amendment was inapplicable.

Since we find that there was probable cause for appellant's arrest at the time he was removed from the plane, it is not necessary to decide the exact point when he was arrested. The considerations in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; and in United States v. Saldana, 453 F.2d 352 (10th Cir.); United States v. Self, 410 F.2d 984 (10th Cir.), and in United States v. Johnson, 463 F.2d 70 (Tenth Circuit 1972), are thus not reached.

Appellant argues that because Officer Carnduff did not obtain an arrest warrant it may be implied that he acted on mere suspicion. It is further argued that the information acted upon was insufficient to establish probable cause in support of a warrant. The information, it is maintained, was vague and the source unreliable.

■ Probable cause depends on whether at the moment of arrest, " . . . the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing [appellant] had committed or was committing an offense." Murray v. United States, 351

F.2d 330, 333 (10th Cir.); McIntire v. United States, 217 F.2d 663 (10th Cir.). Appellant urges that Officer Carnduff was without sufficient information to effect an arrest, and the evidence seized under the ostensible authority of the subsequent warrant was also inadmissible. We disagree. The record shows that prior to the arrest, Officer Carnduff had been hurriedly looking for appellant in downtown Springfield and had just learned that he had purchased a ticket for Reno on Ozark Airlines. The night before, appellant had unsuccessfully solicited the company of the barmaid on a trip to Las Vegas. He had also mentioned his recent release from prison and his having "pulled a job in Texas." In a period of a few hours, appellant had used two aliases. He had bought four drinks, each time cashing a new twenty-dollar bill. The bills were in sequence and appellant had a thick roll of new twenty-dollar bills in his pocket. Appellant also matched the description of the bank robber, and the fact that he was found in a place remote geographically from Albuquerque becomes less significant in view of his announced and recent departure from Texas where he said he had pulled a job. In view of these combined facts, it is our opinion that Officer Carnduff had ample cause to effect an arrest.

■ In view of these circumstances, it would have been impracticable to have sought a warrant of arrest. It is doubtful that a warrant would have issued solely on the basis of the information Officer Carnduff had on the night of April 25th, and by the time he had received additional information the following morning it was too late. Appellant's arrest was thus based on sufficient probable cause, and under the circumstances it would have been impracticable to procure a warrant. See Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828.

■ Appellant's argument that he was denied due process because of the delay between his arrest and his ar-

raignment is without merit. The record shows no evidence of any delay other than the lapse of time which could have been reasonably attributed to appellant's transfer from Illinois to New Mexico and his own untimely sickness.

 Finally, appellant complains of the photographic identification procedure used with two prospective witnesses. However, in view of the fact that the witnesses had ample opportunity to observe appellant and that there was no substantial lapse of time between the observations and the identifications, we find no violation of due process. United States v. Maxwell, 456 F.2d 1053 (10th Cir.); Belton v. United States, 429 F.2d 933 (10th Cir.).

Affirmed.