**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sammie Everett GARDNER,
Defendant-Appellant.**

**No. 72–1676.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 23, 1973.

Decided June 21, 1973.

Herbert H. Galchinsky, Denver, Colo.,
for defendant-appellant.

James M. Dunn, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellee.

Before PHILLIPS, HILL and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

Gardner appeals from a jury conviction and sentence of taking, by force and violence or by intimidation, the money of a federally insured bank, in violation of 18 U.S.C. § 2113(a). On appeal he asserts numerous errors from the time of his arrest through the imposition of sentence.

On the afternoon of May 8, 1972, a teller at the Twentieth South branch of the First Security Bank of Utah was approached by a man with a magazine folded over a small pistol and a paper sack. The teller, complying with the man's order, filled the sack with $1,271 from her cash drawer. The man then left the bank, and the teller immediately informed the bank manager of the robbery. The manager went to the door through which the robber had exited to determine the route of escape. The manager saw a man with a sack under is arm hurriedly walking away, and immediately pursued him; he called for the assistance of several bystanders who also joined in the chase. The pursuers observed the suspected robber enter a car to make his escape.

One of the bystanders who had joined in the chase, Milliner, was an employee of a business establishment in the area of the bank and recognized a customer, Pappadakis, approaching in his car. Upon being informed of the robbery and that the robber was making his escape in a car, Pappadakis, accompanied by Milliner, continued the chase in his car. At one point, when the getaway car stopped at an intersection, Pappadakis got out of his car and attempted to grab the robber who was alone in the car. His attempt proved unsuccessful as the robber immediately proceeded through the red light and dragged Pappadakis

with him. Another motorist at the intersection, Jarvis, saw Pappadakis attired in a service station uniform being dragged down the street and assumed the driver of the car had left a service station without paying for gas. Jarvis joined in the chase and followed the escape car into a deadend alley. Jarvis attempted to make a citizen's arrest, approached the driver of the car, whom he identified in court as Gardner, was confronted by a pistol and warned to get back from the car. Milliner and Pappadakis arrived soon thereafter and were likewise confronted with a pistol and warned to stay back. Both Milliner and Pappadakis identified Gardner as the man who had pointed the pistol and issued the warning.

The man then entered a nearby office building. The police were notified; however, prior to their arrival the man emerged from his hiding place and was pursued by Pappadakis to another hiding place in an area of old houses. When the police and FBI agents arrived at the scene they searched the area for the robbery suspect. Upon observing footprints going into the basement of one of the houses, a police officer ordered the robber to come out; Gardner emerged and was placed under arrest. He was searched and an envelope of money was found. Part of this money was bills with serial numbers which had been previously recorded by the bank that were used as "bait" money. When he was later searched prior to being booked into the county jail, an additional $120 was found in Gardner's wallet. This money, with the money from the envelope, made a total of $1,271 found in Gardner's possession.

■ Gardner contends his arrest without a warrant was invalid because the people who had pursued him and had informed the police of his whereabouts had no direct knowledge or information regarding the robbery of the bank. He asserts the arrest was based only on multiple hearsay information from persons having no direct knowledge of the robbery, and therefore sufficient proba-

ble cause for his arrest without a warrant was not established. The criterion for probable cause to arrest without a warrant depends on whether at the moment of the arrest the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are such as would warrant a prudent man to believe the person to be arrested has committed an offense.[1]

■ The evidence establishes that Gardner was pursued by various individuals virtually from the time he left the bank until the time he was arrested. With the exception of Jarvis, each person in the chain of pursuit knew the man being chased was the suspected robber of the bank. On the basis of the information available to police officers responding to the call relating the location of the suspected robber, there was ample and sufficiently reliable information upon which to arrest Gardner without a warrant.

■ Gardner also maintains the search of his wallet at the time he was incarcerated in the county jail was an unconstitutional search and seizure. He contends the search at this point was no longer incident to his arrest. He also contends the unreasonableness of the search is shown by the wallet being beyond his immediate control and by the search not being necessitated by any exigent circumstances justifying it to discover possible hidden weapons. Contrary to Gardner's assertions, searches of an individual and his wallet or other personal property at this stage of the arrest have been upheld both as incident to a lawful arrest when conducted shortly afterward at the jail or place of detention[2] and for the purpose of discovering concealed weapons.[3] Likewise, such search has been upheld as being part of the necessary inventory of an accused's personal property both to preserve the accused's belongings while he is incarcerated and to safeguard the police from a later groundless claim that some item has not been returned to him.[4] The search of Gardner's wallet was reasonable and was not violative of his Fourth Amendment protections.

■ Gardner additionally challenges the trial court's empaneling of the jury on June 26, 1972, then excusing the members of the panel for fourteen days until the actual trial of the case was begun. He complains this procedure permitted the jurors to acquire unauthorized outside information about the case and thereby denied him a fair and impartial jury. We would first note the allegation that the jurors obtained other information is unsupported conjecture. The court, at the request of defense counsel, inquired of the jury members prior to the actual commencement of trial if any of them had acquired any information about the case. In the absence of any affirmative response from any member of the panel, Gardner's defense counsel expressed his satisfaction with the jury. Aside from being in direct contradiction of his allegation of denial of a fair and impartial jury, the

---

1. United States v. Richerson, 461 F.2d 935 (10th Cir. 1972) cert. denied, 409 U.S. 883, 93 S.Ct. 172, 34 L.Ed.2d 139; United States v. Troutman, 458 F.2d 217 (10th Cir. 1972).

2. Wright v. Edwards, 470 F.2d 980 (5th Cir. 1972); United States v. Annoreno, 460 F.2d 1303 (7th Cir. 1972), cert. denied, 409 U.S. 852, 93 S.Ct. 64, 34 L.Ed. 2d 95; Bailey v. United States, 131 U.S.App.D.C. 314, 404 F.2d 1291 (1968); Malone v. Crouse, 380 F.2d 741 (10th Cir. 1967), cert. denied, 390 U.S. 968, 88 S.Ct. 1082, 19 L.Ed.2d 1174.

3. " . . . we take notice that knives and other small weapons can be secreted in wallets. . . . " United States v. Simpson, 453 F.2d 1028, 1031 (10th Cir. 1972), cert. denied, 408 U.S. 925, 92 S. Ct. 2504, 33 L.Ed.2d 337.

4. United States v. Kelehar, 470 F.2d 176 (5th Cir. 1972); United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331, reh. denied, 402 U.S. 966, 91 S.Ct. 1635, 29 L.Ed.2d 131; Cotton v. United States, 371 U.S. 385 (9th Cir. 1967).

acceptance of this jury following the court's questioning can be considered a waiver of subsequent objection on that basis. We would further note the separation of the jury for this or any other length of time is a matter within the discretion of the trial judge and not *per se* error.[5] In addition, we find nothing in the record from which prejudice may be assumed or even reasonably argued.

 Gardner next challenges the failure of the trial court to permit him to examine the presentence report. He claims this denial precluded him from refuting, distinguishing or explaining any erroneous or misleading information prior to the imposition of sentence. The disclosure of the contents of a presentence report is permissive under the provisions of F.R.Crim.P. Rule 32(c), and the denial of a defendant's request to see the report is not a violation of due process.[6] Permitting the inspection of the presentence report is discretionary with the trial court.[7] We would additionally note the presentence report was made orally by the probation officer at the sentencing hearing at which both Gardner and his counsel were present. Ample opportunity was afforded Gardner to either explain portions of the report or correct erroneous information, which the record indicates was done in one instance. We find no error in this regard.

 Gardner lastly asserts error in the failure of the trial court to permit him allocution or to speak in mitigation of his sentence in accordance with the provisions of F.R.Crim.P. Rule 32(a). The record of that hearing shows the trial court, after receiving the verbal presentence report from the probation officer, imposed a sentence of twenty years' imprisonment. There is no indication in the record that the trial court afforded Gardner the opportunity to speak prior to sentence. The transcript of the sentencing hearing does reflect that Gardner's counsel was given an opportunity by the trial judge to speak on behalf of his client immediately prior to sentencing. In the language and mandate of Rule 32(a)1, the trial judge did not ". . . address the defendant personally and ask him if he wishe[d] to make a statement in his own behalf and to present any information in mitigation of punishment." The failure to follow the formal requirements of the rule is not of itself an error that can be raised by collateral attack.[8] However, the failure to follow the terms of the rule is cognizable on direct appeal, and such failure by the trial court is error.[9] The government confesses this error in the sentencing procedure, and in its brief concedes the case should be remanded for resentencing.

The conviction is therefore affirmed, but the sentence imposed by the trial court is vacated and the case is remanded for sentencing consistent with F.R. Crim.P. Rule 32(a).

5. *See* United States v. DePugh, 452 F.2d 915 (10th Cir. 1971), cert. denied, 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805.

6. United States v. Stidham, 459 F.2d 297 (10th Cir. 1972), cert. denied, 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118.

7. Cook v. Willingham, 400 F.2d 885 (10th Cir. 1968).

8. Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

9. United States v. Becker, 437 F.2d 1086 (5th Cir. 1971).