**PUBLISH**

_____

UNITED STATES COURT OF APPEALS

**Filed 2/26/96**

TENTH CIRCUIT

_____

JETTY LEE HARVEY,                        )
                                         )
    Petitioner-Appellant,                )
                                         )
v.                                       )    No. 95-8011
                                         )
DUANE SHILLINGER, Warden, Wyoming        )
State Penitentiary; ATTORNEY             )
GENERAL OF THE STATE OF WYOMING,         )
                                         )
    Respondents-Appellees.               )

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 93-CV-106)

_____

Mary Beth Wolff (William U. Hill, Attorney General with her on the
briefs), Special Assistant Attorney General, Cheyenne, Wyoming, for
appellees.

Howard A. Pincus (Michael G. Katz, Federal Public Defender with him
on the briefs), Assistant Federal Public Defender, Denver,
Colorado, for appellant.

_____

Before **KELLY, BARRETT and JONES\***, Circuit Judges.

_____

**BARRETT**, Senior Circuit Judge.

_____

*The Honorable Nathaniel R. Jones, Senior Circuit Judge, United
States Court of Appeals for the Sixth Circuit, sitting by
designation.

_____

Jetty Lee Harvey (Harvey) appeals from the district court's order of February 1, 1995, Harvey v. Shillinger, 893 F. Supp. 1021 (D. Wyo. 1995)(Harvey III), dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

## Facts

On January 9, 1986, Harvey and two others were charged in the District Court, Third Judicial District, Sweetwater County, Wyoming, with kidnapping and sexual assault in the first degree or aiding and abetting in those offenses. Following a three-day jury trial in July, 1987, Harvey was convicted of all charges. At sentencing, on October 23, 1987, the trial court asked Harvey if he had anything to say in mitigation of punishment. After being sworn in, Harvey made an allocution statement to the trial court under oath. He was subsequently sentenced to not less than twenty years nor more than thirty years imprisonment on each charge, to run concurrently.

On direct appeal to the Wyoming Supreme Court, Harvey's convictions were vacated on speedy trial grounds. See Harvey v. State, 774 P.2d 87 (Wyo. 1989) (Harvey I).

On July 7, 1989, Harvey was charged with conspiracy to commit kidnapping and conspiracy to commit sexual assault. After a plea agreement fell through and the Wyoming Supreme Court denied a writ of prohibition, Harvey proceeded to trial on the conspiracy

- 2 -

charges.  At trial, the prosecution read portions of Harvey's allocution statement made at his first sentencing hearing in evidence, including the following:

> I meant this woman no harm.  In fact, I even stopped her from being harmed at the end.  But before that, there was--I even tried stopping.  I tried resisting long before she was even abducted. Everett was just insistent from two blocks past her to two blocks to her, telling me to grab her.  Grab her.  And I was saying, 'No.  I don't want this.'  And even when I pulled up beside her and I rolled down my window, she walked by.  I just asked her if she wanted a ride because it was cold.  She never looked at me.  She never answered.  She just kept her head down, her hands in her coat pocket and she walked by.  And I turned to Everett and I said, 'See, she doesn't even want a ride.'  And he says, 'No. All you got to do is grab her.'  He throws it into reverse and backs up past the woman, slapping me, 'Just grab her.  Grab her.'  And that's when I finally broke down on it there. I got out and stepped out in front of her.  She walked up to me, lifted her head, looked at me and I said, 'Hey, look.  Just get in and we'll give you a ride home.'  And she turned and walked around me.  And that's when I heard Everett say, 'Grab her, chicken shit.'  And that was the final straw of the dare.
>
> I turned and grabbed her by the coat, the shoulder, pulled her off her feet toward the pickup.  Picked her up and put her in the vehicle.  She was laying between the seats with her hands up like this.  She was saying, 'Don't hurt me.'  I said, 'No one is going to hurt you.' She relaxed.  I turned back to roll up my window and she starts kicking the dash with her boots and hollering, 'Don't hurt me.  Don't hurt me.'  I grabbed her legs by the boots and I said, 'Don't worry.  No one is going to hurt you.'[1]

---

[1]    At his request, this portion of Harvey's allocution statement, which had been excised by the district court, was also read to the jury:

She relaxed.  I let go, turned back and finished rolling up the window.  The woman got up into the back seat.  She started a conversation which was, like, 'You

And then Everett Phillips--I don't know where we were going. He pulls into this trailer park and start hollering, 'I want some. I want some.' I says, 'No, Everett. Let's take the woman home.' And he goes, 'Well, the bitch can suck it.' And I grabbed his arm then and I said, 'No, Everett. We're taking her home. Let's go.' And that is when I saw a cop car go by through the window. And I said, 'Now there is a cop. Let's just take her home.'

And when we stopped, the cops, I didn't even know it was cops. I could see lights in the mirror. Everett got out and went back to them. He was gone for, anyway, two minutes and there was no struggle in the back. There was no one hollering, screaming. I just looked in the mirror. And then as I'm looking in the mirror back a couple of minutes or so, this woman, Sharon Brouillette, she got between the seats and started headed for the driver's door. And I just stepped out of the truck. And the police officer told me to stop and put my hands on the camper. That's just what I done until after the fight with David Swazo. They cuffed us and took us to jail. But, at the time of all of this, there was a real--there was a big factor too of very drunk.

(Exhibits to Motion to Supplement the Record, Exhibit B at 1168-1170).

On January 17, 1990, following a jury trial, Harvey was convicted of conspiracy to commit kidnapping and acquitted of conspiracy to commit sexual assault. He was sentenced to twelve to fifteen years in the Wyoming State Penitentiary.

Harvey appealed his conspiracy conviction to the Wyoming

---

guys from Texas?' And we just kind of smiled. I looked at David. And she says--looks at David and leans up against him and says to him, 'You're kind of cute.' And they actually kissed at that time. She took her coat off and I quit watching from that point on. We just drove.

(Exhibits to Motion to Supplement the Record, Exhibit B at 1172).

Supreme Court alleging, <u>inter</u> <u>alia</u>, double jeopardy, speedy trial violation, violation of right to an impartial jury, and improper use of his allocution statement. On June 11, 1992, the Wyoming Supreme Court affirmed his conspiracy conviction. <u>See</u> <u>Harvey v.</u> <u>State</u>, 835 P.2d 1074 (Wyo.), <u>cert</u>. <u>denied</u>, 506 U.S. 1022 (1992) (<u>Harvey II</u>).

On April 5, 1993, Harvey petitioned the federal district court for a writ of habeas corpus alleging: improper use of his allocution statement made at the sentencing phase of his first trial; ineffective assistance of counsel at his first sentencing; denial of his right to speedy trial; double jeopardy; and Wyoming Supreme Court Justice Thomas' participation in the second appeal violated "fundamental fairness" principles.

On February 1, 1995, the district court dismissed Harvey's petition. <u>See</u> <u>Harvey III</u>, 893 F. Supp. 1021. The district court found that: the use of Harvey's allocution statement at his conspiracy trial was not error because he "voluntarily, knowingly, and intelligently waived his right against self-incrimination at his first sentencing hearing," <u>id</u>. at 1030; Harvey's was not denied effective assistance of counsel; "prosecution of [Harvey] on conspiracy charges after his conviction for the substantive offenses, does not violate double jeopardy principles," <u>id</u>. at 1032; Harvey's right to a speedy trial was not violated; and Justice Thomas' participation in Harvey's direct appeal did not

- 5 -

violate his right to due process.  We agree.


## Issues

On appeal, Harvey contends that the district court erred in dismissing his petition for a writ of habeas corpus because: (1) his conspiracy conviction violated the principles of double jeopardy; (2) his Sixth Amendment right to a speedy trial was violated; (3) the use of his allocution statement violated his Fifth Amendment and Fourteenth Amendment rights; and (4) trial counsel's failure to advise him of the consequences of making an allocution statement at his first sentencing hearing deprived him of his Sixth Amendment right to effective assistance of counsel.[2]

We review a district court's legal conclusions in dismissing a petition for a writ of habeas corpus de novo. Ballinger v. Kerby, 3 F.3d 1371, 1374 (10th Cir. 1993).  "Legal conclusions and mixed questions of law and fact are reviewed de novo, although findings of fact underlying mixed questions are accorded the presumption of correctness."  Manlove v. Tansy, 981 F.2d 473, 476 (10th Cir. 1992).

---

[2]     Harvey's original pro se petition raised issues (1), (3), and (4).  After counsel was appointed, issue (2) was added. Due to the inadequate supplemental briefing, we will address issues (3) and (4) according to Harvey's pro se petition which we review under a liberal standard.  See Jones v. Cowley 28 F.3d 1067, 1069 (10th Cir. 1994).

Discussion

I.  Double Jeopardy

Harvey contends that his second trial and conviction for conspiracy to commit kidnapping after the Wyoming Supreme Court vacated his convictions for kidnapping and sexual assault violates the Double Jeopardy Clause of the Fifth Amendment.

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."  In United States v. Felix, 503 U.S. 378, 380-81 (1992), the Supreme Court held that "prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause."  See also Pinkerton v. United States, 328 U.S. 640, 643 (1946) ("[T]he commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses . . . [a]nd the plea of double jeopardy is no defense to a conviction for both offenses.").

Accordingly, we hold that prosecuting Harvey on conspiracy charges after his convictions for the substantive offenses were vacated did not violate his right to be protected from double jeopardy.

II.  Speedy Trial

Harvey contends that he was denied his Sixth Amendment right to a speedy trial by the delay between his original arrest on the substantive offenses on January 5, 1986, and his second trial on the conspiracy charges on January 8, 1990.

"A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant." United States v. Dirden, 38 F.3d 1131, 1138 (10th Cir. 1994) (quoting United States v. Tranakos, 911 F.2d 1422, 1427 (10th Cir. 1990)). See Barker v. Wingo, 407 U.S. 514, 530 (1972) (identifying four factors in speedy trial balancing test). While no single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial," Barker, 407 U.S. at 533, "the length of the delay is to some extent a triggering mechanism." Id. at 530. Only if the period of delay is "presumptively prejudicial" need we inquire into the other factors. Id.; Dirden 38 F.3d at 1137; Tranakos, 911 F.2d at 1427.

In determining whether a delay is "presumptively prejudicial," we have not drawn a bright line beyond which pretrial delay will trigger a full Barker analysis because "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530-31. See Dirden, 38 F.3d at 1138 (seven and one-half month delay between

arraignment and trial not "presumptively prejudicial"); United States v. Occhipinti, 998 F.2d 791, 798 (10th Cir. 1993) (delay of 172 days insufficient to trigger Barker analysis); United States v. Kalady, 941 F.2d 1090, 1095-96 (10th Cir. 1991) (eight month delay between indictment and trial nonprejudicial); United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990) (delay of thirty months insufficient to trigger Barker analysis). But see Perez v. Sullivan, 793 F.3d 249, 255 (10th Cir.) (fifteen month delay triggered Barker analysis), cert. denied, 479 U.S. 936 (1986).

In addition, the right to a speedy trial "attaches only when a formal criminal charge is instituted and a criminal prosecution begins." United States v. MacDonald, 456 U.S. 1, 6 (1982). Hence, "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable." Id. at 8.

Because Harvey's original convictions were vacated and conspiracy to commit kidnapping[3] is a separate offense, see part I., the speedy trial clock for Harvey's second trial did not start to run until the first filing relating to the conspiracy charge. Thus, the relevant time period is from the filing of the indictment on the conspiracy charge on July 7, 1989, until the date of the conspiracy trial on January 8, 1990, 185 days or approximately six months.

---

[3]    Harvey was acquitted of conspiracy to commit sexual assault; thus, we are only concerned with the charge of conspiracy to commit kidnapping on which we was convicted.

- 9 -

This period is further reduced by two delays attributable to Harvey. See Dirden, 38 F.3d at 1138 (delays attributable to the defendant do not weigh against the government). First, Harvey filed a petition for a writ of prohibition with the Wyoming Supreme Court on July 25, 1989, which was denied on September 18, 1989. See State ex rel. Harvey, 779 P.2d 291 (Wyo. 1989). This is a span of fifty-five (55) days. Second, on December 18, 1989, an order certifying questions to the Wyoming Supreme Court on Harvey's motion was entered. The Wyoming Supreme Court remanded the case to the district court with the questions unanswered on January 2, 1990. This is a span of fifteen (15) days. Therefore, the time from the filing of the complaint to the date of trial, with time deducted for delays attributable to Harvey, is 115 days.

Based upon the circumstances of this case and application of the speedy trial factors outlined in Barker, we conclude that the 115-day time span between the filing of the complaint and the date of the start of the trial was neither "presumptively prejudicial" nor significantly long. Thus, under Barker, we need not analyze the speedy trial issue further. Accordingly, Harvey was not denied his right to a speedy trial.

### III. Allocution Statement

Harvey challenges the use of his allocution statement as evidence of guilt in his conspiracy trial. Harvey contends that

his allocution statement was not made voluntarily and that he did not know the rights he was giving up by making the statement.

Under 28 U.S.C. § 2254(a) an application for a writ of habeas corpus to disturb a state court judgment may issue only if it is found that the applicant is "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States."  Thus, the only injury that will suffice to support a petition for habeas corpus relief is an injury to a petitioner's federally protected right; state law injuries cannot and do not suffice.  Pulley v. Harris, 465 U.S. 37, 41 (1984).

While Wyoming has recognized the right to make a statement in mitigation of a fine or punishment as constitutionally protected, see Christy v. State, 731 P.2d 1204, 1207 (Wyo. 1987), under federal law, the right to allocution is not constitutionally protected.  Hill v. United States, 368 U.S. 424, 428 (1962); United States v. Gardner, 480 F.2d 929, 932 (10th Cir.), cert. denied, 414 U.S. 977 (1973).  Rather, it is a right delineated by Fed. R. Cr. P. 32(c)(3)(C)[4], the violation of which is not subject to collateral attack as unconstitutional.  Hill, 368 U.S. at 426.

---

[4]      Fed. R. Cr. P. 32(c)(3)(C) provides that:
    (3) **Imposition of Sentence.**  Before imposing sentence, the court must:
                         * * *
    (C)  address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence;

- 11 -

Therefore, the fundamental issue here is not whether Harvey's right to allocution was violated, but whether his right to due process was violated by forcing him to choose between his constitutional right to remain silent and his statutory right to speak on his own behalf in mitigation of punishment.

In Crampton v. Ohio, decided with McGautha v. California, 402 U.S. 183 (1971), vacated in part on other grounds, 408 U.S. 491 (1972), the Court addressed a similar situation under Ohio's single trial procedure where a defendant could exercise his constitutional right not to be compelled to be a witness against himself on the issue of guilt only at the cost of surrendering any chance to plead his case on the issue of punishment. The Court upheld Ohio's single procedure, stating:

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. McMann v. Richardson, 397 U.S., at 769. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

Crampton, 402 U.S. at 213. See Jenkins v. Anderson, 447 U.S. 231, 236 (1980); Corbitt v. New Jersey, 439 U.S. 212, 218--19 n.8 (1978) (quoting Crampton); Middendorf v. Henry, 425 U.S. 25, 48 (1976) (quoting Crampton); United States v. Jenkins, 904 F.2d 549, 558 n.10 (10th Cir. 1990).

We turn first to the privilege against self-incrimination.

The contention is that Harvey was unlawfully compelled to become a witness against himself in order to take advantage of his right to allocution in the hope of receiving a lenient sentence. The Court in Crampton defined the issue as "whether it is consistent with the privilege for the State to provide no means whereby a defendant wishing to present evidence or testimony on the issue of punishment may limit the force of his evidence . . . to that issue." Id. at 213-14.

The Crampton Court concluded that "the policies of the privilege against compelled self-incrimination are not offended when a defendant . . . yields to the pressure to testify on the issue of punishment." Id. at 217. In reaching its decision, the Court cited to many examples where the defendant is forced to choose between competing rights. See Brown v. United States, 356 U.S. 148 (1958) (one who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination); Spencer v. Texas, 385 U.S. 554, 561 (1967) (a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or otherwise inadmissible evidence); United States v. Calderon, 348 U.S. 160, 164 n.1 (1954) (a defendant whose motion for acquittal at the close of the State's case is denied must decide whether to stand on his motion or put on a defense, with the risk that in so doing he will bolster the

State's case enough to support a verdict of guilty); Williams v. Florida, 399 U.S. 78 (1970) (upheld a Florida law requiring a defendant to choose between abandoning his alibi defense or giving the State both an opportunity to prepare a rebuttal and leads from which to start).

Accordingly, the privilege against compelled self-incrimination is not offended when a defendant yields to the pressure to testify on the issue of punishment in the hope of leniency. A defendant's choice to exercise his right to allocution, like the choice to exercise the right to testify, is entirely his own; he may speak to the court, but he is not required to do so. Once a defendant chooses to testify, though, he waives his privilege against compelled self-incrimination with respect to the testimony he gives and the testimony is admissible in evidence against him in later proceedings. See Harrison v. United States, 392 U.S. 219, 222 (1968) ("[W]e do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings."). It makes no difference that the defendant may have been motivated to testify in the first instance only by reason of the strength of the lawful evidence adduced against him. Id. Therefore, the use of a Harvey's allocution statement in his subsequent conspiracy trial did not violate his due process rights if the making of the statement was an effective waiver of his Fifth Amendment rights.

An effective waiver of one's Fifth Amendment right against compelled self-incrimination may exist only if it is voluntary, knowing, and intelligent with an understanding of the consequences of such waiver.  See Miranda v. Arizona, 384 U.S. 436, 444 (1966).  In Colorado v. Spring, 479 U.S. 564, 573 (1987), the Court stated that the inquiry of whether a waiver is coerced "has two distinct dimensions:"

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

(quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

We hold that Harvey's decision to make an allocution statement was voluntary.  At the pretrial hearing to determine if his allocution statement was admissible in his conspiracy trial, Harvey conceded that he made his allocution statement voluntarily and that he was not coerced.[5]  (ROA, Vol. I, Tab 3, Exhibit C at 969).

---

[5]    Although Harvey conceded the issue of voluntariness, Harvey's appointed counsel rests the bulk of his argument on this issue premised on the idea that the trial court coerced Harvey into making his allocution statement by addressing him personally and asking if he would like to make a statement in mitigation of punishment.  (Appellant's Supplemental Opening Brief at 37-42).  However, the trial court simply followed the dictates of the Wyoming rules of criminal procedure.  See W. R. Cr. P. 32(c); (ROA, Vol. I, Tab 12, Exhibit 2 at 2).  There cannot be coercion

- 15 -

Therefore, our only concern is whether or not he did so knowingly, intelligently, and with an understanding of the consequences.

Although Harvey may not have been aware of the specific consequences that ultimately resulted from his waiver of his right to remain silent at the sentencing hearing, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." Colorado, 479 U.S. at 574. "The Fifth Amendment guarantee is both simpler and more fundamental: A defendant may not be compelled to be a witness against himself in any respect." Id. at 574. Under Miranda, the defendant must be aware of his right to remain silent and of the consequences of abandoning that right. Id. at 577.

There is no allegation that Harvey failed to understand the basic privilege guaranteed by the Fifth Amendment; Harvey understood that he had the right to remain silent. Nor is there any allegation that he misunderstood the consequences of speaking freely to the district court; Harvey knew that anything he said could be used as evidence against him. Harvey was advised of his Fifth Amendment rights at the time he was arrested, at the time of his initial appearance in county court, and at the time of his arraignment in district court. Harvey was represented by counsel at all times. Finally, Harvey made his allocution statement under

when the court simply follows the mandated procedures without any independent elaboration.

- 16 -

oath after having been sworn in by the trial court.  In sum, we agree with the district court that Harvey "voluntarily, knowingly, and intelligently waived his right against self-incrimination at his first sentencing hearing."  Harvey III, 893 F. Supp. at 1030.


IV.  Ineffective Assistance

Harvey contends that he was denied effective assistance of counsel at the sentencing phase of his first trial because his counsel failed to advise him that his allocution statement could be used against him in a second trial.

"The writ of habeas corpus shall not extend to a prisoner unless [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  See also 28 U.S.C. § 2254(a).  In Maleng v. Cook, 490 U.S. 488, 491-92 (1989), the Court concluded that while the concept of "in custody" does not require that the petitioner be physically confined and extends beyond incarceration to parole on an unexpired sentence, it does not extend to the "situation where a habeas petitioner suffers no present restraint from a challenged conviction" at the time of the filing of the habeas petition.  In Gamble v. Parsons, 898 F.2d 117, 118 (10th Cir.), cert. denied, 498 U.S. 879 (1990), we held that Maleng:

>     precludes a defendant from challenging a fully-expired conviction in isolation even though it may have potential

- 17 -

collateral consequences in some future case.  Further, even if the fully-expired conviction, has, in fact been used to enhance a subsequent sentence, it may not be attacked directly in a habeas action.  Rather the attack must be directed toward the enhanced sentence under which the defendant is in custody.  However, if the attack is so directed, the defendant may argue that his present sentence is improper because it has been enhanced by a prior, unconstitutional conviction.

See also Waldon v. Cowley, 880 F.2d 291, 292 (10th Cir. 1989).

Harvey is currently incarcerated pursuant to the conspiracy conviction and sentence entered after his second trial.  However, his claim is a direct attack on his counsel's performance at the sentencing phase of his first trial.  Inasmuch as his first convictions were vacated by the Wyoming Supreme Court, see Harvey I, 774 P.2d 87, he suffers no present restraint as a result of those convictions.  Accordingly, we interpret his habeas petition, when construed with the deference to which he is entitled as a pro se litigant,[6] as a challenge to his current incarceration through his first counsel's performance at the sentencing hearing during his first trial.  Therefore, the issue becomes whether Harvey's "present sentence is improper because it has been enhanced by a prior unconstitutional conviction."  Gamble, 898 F.2d at 118.

To constitute enhancement, a petitioner must show that "if he prevails in challenging his prior expired conviction, the sentence

---

[6]    For the purposes of this case only, we construe Harvey's petition as pro se, even though appointed counsel filed an Appellant's Supplemental Opening Brief, to avoid the adverse effects of counsel's apparent oversight of Maleng's and Gamble's prohibition against attacking expired convictions directly.

that he is currently serving will be reduced." Collins v. Hesse, 957 F.2d 746, 748 (10th Cir. 1992). If Harvey were to prevail on his ineffective assistance of counsel claim, his first convictions would be unconstitutional. However, this would not affect his current sentence. The subsequent use of Harvey's allocution statement depends on the effectiveness of his waiver of his Fifth Amendment rights, see part III.; it does not depend on his counsel's failure to advise him in any way. Therefore, Harvey's current sentence was not "enhanced" in any manner by his vacated prior convictions.

As a result, Harvey is not "in custody" for purposes of this claim. Therefore, we are without jurisdiction to consider this claim further.

## Conclusion

Based of the foregoing analysis, the district court properly dismissed Harvey's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

**AFFIRMED.**