FILED
United States Court of Appeals
Tenth Circuit

November 1, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PHINEHAS LEE MCNEAL,

    Defendant - Appellant.

No. 15-1458
(D.C. No. 1:15-CR-00054-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.
_____

A jury convicted Phinehas McNeal of two counts of being a felon in

possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  The district court

sentenced him to two concurrent 120-month sentences, followed by three years of

supervised release.  McNeal now appeals his conviction and sentence, arguing that

the district court violated his rights to self-representation and allocution.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    Background

Section 922(g)(1) prohibits McNeal from possessing firearms or ammunition because he is a convicted felon.  The police found both, however, after they arrested McNeal for shoplifting from a sporting goods store and searched his person and a bedroom in his mother's home.  He was indicted on one count of possession of firearms by a previously convicted felon and two counts of possession of ammunition by a previously convicted felon.

Days before trial, McNeal's counsel moved to withdraw his representation, citing "irreconcilable differences . . . on how to proceed on this case."  R., Vol. I at 24.  The motion stemmed from McNeal's belief that his attorney should have filed certain pretrial motions.  The district court denied the motion as untimely and unwarranted.

The morning of trial, before voir dire began, McNeal's counsel informed the district court of his client's desire to proceed pro se.  The district judge engaged in a colloquy with McNeal, which explored McNeal's knowledge of the law and the sentencing guidelines, his understanding of his potential sentence, his experience in prior criminal cases, and his familiarity with the Federal Rules of Criminal Procedure and Evidence.  When the court made clear the trial would begin that day, McNeal stated that he "need[ed] time to file motions" and "preserve all issues."  *Id.* at 18.

After this exchange, the district judge advised McNeal of his constitutional right to represent himself and the risks inherent in invoking that right.  The judge expressed his belief that it would be a "mistake" for McNeal to represent himself and

"strongly urge[d]" him not to do so, *id.* at 20; emphasized that McNeal had a trained, prepared lawyer "ready and willing to proceed" who was more "equipped" to represent him, *id.* at 20-21; and advised McNeal of his ability to file, if needed, post-trial claims against his counsel to challenge the competency of his legal representation. The judge then concluded by reiterating McNeal's right to represent himself and asking for his decision:

> Not[]withstanding that, in light of this, in light of the advisement, in light of the penalty you may suffer, in light of all of the difficulties of representing yourself, you have the right to proceed to represent yourself . . . pro se, if that's what you wish to do.
>
> So my question to you is, understanding all of the things that I have told you, including the fact that I'm going to bring this jury in, and we're going to start this trial in a matter of minutes, do you still desire to represent yourself and give up your right to be represented by counsel.

*Id.* at 21. After an off-record discussion with his counsel, McNeal responded, "I'm going to allow my lawyer to represent me today." *Id.* The court then deemed the motion "moot and withdrawn." *Id.*

Ultimately, a jury convicted McNeal on the two counts of being a felon in possession of ammunition but found him not guilty on the corresponding weapons charge. After trial, McNeal chose to proceed pro se and filed a series of motions, all of which were denied.

At sentencing, McNeal was represented by advisory counsel. The district court invited McNeal to make a statement to the court:

> Mr. McNeal this is your opportunity to speak directly to me, without having your words passed through anyone else. I will tell you that you can talk to me, and I will listen to anything you have to say, whether it

3

> be related to sentencing, or any other matter that you think is important that I consider in trying to decide what the appropriate sentence is for you. What I tell people, and I tell you, is this, just talk to me the way you will talk to me if we were out in the street, because, frankly, . . . I'm going to understand it better, you are going to say it better, and don't worry about all of the artificial trappings of the courtroom. I'm not saying they are not important. They are. But by the same token this is about communication. So let me hear what you have got to say.

R., Vol. IV at 74-75. McNeal gave a statement, in which he represented he was getting ammunition for his mother's weapons and did not know he was prohibited from doing so because of his convicted-felon status. The district court then gave McNeal another chance to speak, emphasizing: "I want to make sure that you have the opportunity to speak to me. . . . [T]his isn't justice by the clock. I mean, if there's something else you want to say, you get to say it." *Id.* at 78-79. In response, McNeal asked for leniency.

The district court noted McNeal's repeated, dangerous conduct; the inconsistency between his allocution statement that he bought the bullets for his mother and his earlier explanation that the salesman gave him bullets instead of slingshot pellets; his refusal to accept responsibility; the timing of the offense (just one month after release from prison); his continuing insistence on his right to possess firearms and ammunition despite his status as a previously convicted felon; and mitigating factors such as mental health issues and the lack of egregious conduct. It then imposed two concurrent 120-month sentences, which fell squarely within the applicable Sentencing Guidelines range of 110-to-125 months.

4

## II.    Analysis

### A.    Right to Self-Representation

"A criminal defendant has a constitutional and a statutory right to waive his right to counsel and represent himself at trial." *United States v. Akers*, 215 F.3d 1089, 1096 (10th Cir. 2000). These rights derive from *Faretta v. California*, 422 U.S. 806, 834-36 (1975), and 28 U.S.C. § 1654, respectively. McNeal argues the district court violated his right to self-representation by (a) overemphasizing the dangers of proceeding pro se and the benefits of continuing with appointed counsel in a way that coerced him to forego the right; and (b) not granting him a continuance, thereby leaving him no choice but to proceed to trial with counsel. We review de novo whether the district court violated McNeal's right to self-representation. *See United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000).

Typically, a defendant who challenges a conviction based on the right to self-representation actually invoked that right, only to have the district court deny his request to proceed pro se. But the context here is different. The district court did not *deny* a request for self-representation, contrary to McNeal's characterization of the underlying events. *See, e.g.*, Aplt. Opening Br. at 30 ("Because the trial court impeded Mr. McNeal's ability to effect a voluntary, knowing and intelligent waiver of his right to counsel, it necessarily follows that his right of self-representation was improperly denied."). Rather, McNeal *withdrew* his request after the district court's advisement. McNeal thus waived his right to self-representation. *See Munkus v. Furlong*, 170 F.3d 980, 984 (10th Cir. 1999) (explaining that a defendant may waive

5

his right to self-representation "even after he has unequivocally asserted it");
*cf. United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976) (concluding that the defendant forfeited his right to self-representation by taking vacillating positions).

This waiver eliminates the need for us to decide whether McNeal satisfied the requirements to invoke the right to self-representation.  *See United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (listing those requirements).  Rather, our task is to assess whether the district court somehow violated that right during the formal advisement that is required in this situation.

We have repeatedly emphasized that a trial judge must make an affirmative attempt to assess whether a defendant understands the potential negative consequences of self-representation.  *See, e.g.*, *United States v. Allen*, 895 F.2d 1577, 1578 (10th Cir. 1990) ("[B]efore allowing a defendant to proceed *pro se*, the district judge must ensure and establish on the record that defendant knows what he is doing and that his choice is made with eyes open." (internal quotation marks and brackets omitted)); *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987) ("*Faretta* requires a showing on the record that the defendant who elects to conduct his own defense had some sense of the magnitude of the undertaking and the hazards inherent in self-representation when he made the election.  The task of ensuring that defendant possesses the requisite understanding initially falls on the trial judge, who must bear in mind the strong presumption against waiver [of the right to counsel]." (citations omitted)).

A district court need not follow a prescribed formula or ask a "precise litany" of questions to fulfill its obligation here. *Padilla*, 819 F.2d at 959. But "[i]t is ideal when the trial judge conducts a thorough and comprehensive formal inquiry including topics such as the nature of the charges, the range of punishment, possible defenses, and a disclosure of risks involved in representing oneself *pro se*." *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (internal quotation marks omitted). The district court's advisement closely followed these parameters and allowed McNeal to make an informed choice. We discern no error.

McNeal argues that the court "arguably inflated" the advantages of representation and "actively discouraged" self-representation in a way that prevented him from making an informed choice. Aplt. Opening Br. at 28-29. But his reliance on Seventh Circuit cases and a law review article is unavailing in light of this court's previous approval of an advisement that "repeatedly stressed the importance of retaining an attorney" and explained that "self-representation could be extremely detrimental." *See Turner*, 287 F.3d at 984 (in which the district judge told the defendant "that he would not even represent himself in a speeding ticket" and "analogized self-representation to an untrained person performing a chiropractic procedure on himself or operating on oneself to remove cancer"). Likewise, the advisement under scrutiny here did not infringe on McNeal's right to self-representation.

Nor did the district court violate McNeal's right to self-representation by refusing "to grant a continuance to allow him adequate time to prepare his own

7

defense." Aplt. Opening Br. at 31. As a threshold matter, the record does not even show that McNeal requested—or the district court denied—a continuance to prepare for trial. We decline to treat the district court's preemptive statement that it was not willing to continue the trial as an affirmative denial of a motion for a continuance that was never proffered. In any event, McNeal could not satisfy the deferential standard of review that would apply: "A trial court enjoys broad discretion on matters of continuances, even when the parties implicate Sixth Amendment issues." *United States v. Hughes*, 191 F.3d 1317, 1324 n.3 (10th Cir. 1999) (internal quotation marks omitted).

## B. Right to Allocution

McNeal next argues that the district court "effectively penalized [him] for exercising his right to allocute at sentencing when it relied on statements he made during the course of the allocution to justify imposition of a sentence towards the top of the Guidelines range." Aplt. Opening Br. at 8. Because McNeal did not preserve this issue by objecting to the district court, we review for plain error. *United States v. Mendoza-Lopez*, 669 F.3d 1148, 1150-51 (10th Cir. 2012). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

There was no error during the allocution phase of sentencing, plain or otherwise. Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires a district court to give a defendant an opportunity to speak before imposing a sentence. The

8

court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R Crim. P. 32(i)(4)(A)(ii). The district court complied with this rule when it gave McNeal two unfettered opportunities to speak to the court on any topic he wished, and McNeal took advantage of both opportunities.

Unable to dispute that he received a meaningful opportunity to address the court before sentencing, McNeal takes issue with how the district court factored the contents of his statement into his sentence—particularly, his refusal to take responsibility for his actions and the implausibility of his defense. He contends that enhancing his sentence on the basis of his allocution statement "effectively punished" him for exercising that right. Aplt. Opening Br. at 41. But Rule 32(i)(4)(A)(ii) says nothing about how a district court must evaluate the information it receives during allocution. And we have made clear that "the privilege against compelled self-incrimination is not offended when a defendant yields to the pressure to testify on the issue of punishment in the hope of leniency." *Harvey v. Shillinger*, 76 F.3d 1528, 1535 (10th Cir. 1996).

## III.  Conclusion

The district court's judgment and sentence are affirmed.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

9